RECEIVED

MAR 2 3 2011

TONY R. MOORE, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

CLARENDON AMERICA
INSURANCE COMPANY

versus

SOUTHERN STATES PLUMBING, INC.

CIVIL ACTION NO. 09-1974
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court are three motions for summary judgment. The plaintiff, Clarendon America Insurance Company ("Clarendon"), has filed two motions for summary judgment, seeking a judicial declaration that it has "no defense, coverage, or indemnity obligations" under its policy for losses claimed in an underlying suit. See Record Documents 9 and 33. The third-party defendant, American Vehicle Insurance Company ("AVIC"), has also filed a motion for summary judgment requesting a declaration by the court that "its policy provides no coverage" in the same underlying suit. See Record Document 28. Based on the following, Clarendon's first motion for summary judgment is **GRANTED**. Clarendon's second motion is now **MOOT**. AVIC's motion for summary judgment is **GRANTED**.

1

# I. BACKGROUND

In December 2005, Victoria Randazzo ("Randazzo") discovered a plumbing leak in her bathroom and "flooding to the carpet, wood flooring, several sheetrock walls and other areas of her home." Record Document 9, Ex. 1, Second Amended Petition at 3. She notified the developer of the subdivision, Southern Homes, L.L.C., who dispatched Southern States Plumbing, Inc. ("Southern States") to perform the repair. See id. at 3.

On September 15, 2006, after the repairs had been completed, Randazzo sold her home to Toni and Richard Johnson ("the Johnsons"). See Record Document 9, Ex. 1, Petition for Damages at 1. Randazzo did not reveal the previous water damage to the home.[1] See id. at 2. After moving into the home, the Johnsons' daughter developed "respiratory problems, allergies and other illness." Id. In May of 2007, following the advice of their daughter's doctor, the Johnsons undertook renovations to their home, including "removing all of the carpet, repainting all of the walls,

---

[1] The Johnsons allege fraud and negligence by Victoria Randazzo. See Record Document 9, Ex. 1, Second Amended Petition at 6. The Johnsons claim Randazzo "advertised that her home was 'well maintained' and had been improved by '$15,000.00 of upgrades.'" Id. at 4. She not only "failed to disclose the 2005 plumbing leaks and resulting flooding," but on the disclosure form, she "specifically checked off that there had been no 'flooding, water intrusion, accumulation or drainage problem' with the property." Id.; Record Document 9, Ex. 1, Petition for Damages at 2.

cleaning all of the ductwork," and giving away their dog. Id., Second Amended Petition at 5. In late June 2007, the Johnsons learned "for the first time" that their home experienced water damage in December 2005 and now contained high levels of penicillium/aspergillas fungus. See id. The Johnsons were advised to move out of their home immediately, which they did. See id.

The Johnsons initiated suit in Louisiana state court against Southern States, among others, alleging negligence by Southern States in the construction and repair of the plumbing systems and fixtures in their home (hereinafter the "Johnson suit").[2] See Record Document 9, Ex. 1, Second Amended Petition at 7. The Johnsons seek damages for the medical treatment of their daughter, the cost of repairs and remediation, the diminished value of the home, the expense of moving while the home was "uninhabitable," and general pain and suffering. See id. at 7-10. Southern States was insured under Clarendon insurance policy number DSA015407 for the period August 4, 2005, to August 4, 2006, ("the Clarendon policy") and under AVIC insurance policy number GL0517004459-00 for the period July 29, 2006, to July 29, 2007, ("the AVIC policy"). See Record Document 9, Ex. 2; Record Document 28,

---

[2] Toni Johnson and Richard Johnson, individually and on behalf of their minor child v. Victoria Randazzo and Southern Homes, L.L.C., 2007-15079 (filed in the 22nd Judicial District Court for the Parish of St. Tammany on October 18, 2007).

Ex. A. Both policies are commercial general liability ("CGL") policies. See id.

Clarendon commenced this diversity action, seeking a ruling that its policy "does not afford coverage, indemnity or a defense" to Southern States for the losses claimed by the Johnsons in the state court suit. See Record Document 1 at 8. Southern States in turn filed a third-party complaint against AVIC. See Record Document 22. Clarendon has filed two motions for summary judgment. In its first motion, Clarendon requests a judicial declaration that its policy does not provide coverage for the property damage and bodily injuries claimed by the Johnsons because they did not "occur during the policy period." See Record Document 9. In its second motion, Clarendon seeks a determination by the court that the policy does not afford coverage for the Johnsons' alleged damages because they fall within the fungus and work product exclusions. See Record Document 33. AVIC has also filed a motion for summary judgment on the basis that its policy contains fungus and work product exclusions that preclude coverage of the Johnsons' damages. See Record Document 28.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law."[3] Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

**B.   Duty To Defend And Indemnify.**

"Under Louisiana law, an insurer's duty to defend suits brought against an insured 'is broader than [its] duty to indemnify' the insured." Lamar Adver. Co. v.

---

[3] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed.R.Civ.P. 56(a) and advisory committee's note (emphasis added).

Cont'l Cas. Co., 396 F.3d 654, 660 (5th Cir. 2005).[4] Courts should compare the allegations in the complaint with the terms of the policy. See id. Construing the petition liberally, "[i]f there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded, the insurer must defend the insured." Id. (quoting Complaint of Stone Petroleum Corp. v. Ins. Co. of N. Am., 961 F.2d 90, 91 (5th Cir. 1992)).

### C. Property Damage And Bodily Injury During The Policy Period.

The Clarendon policy states that "this insurance applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' occurs during the policy period." Record Document 9, Ex. 2, CGL Form at 1. Clarendon contends that the Johnsons' damages did not occur during the policy period, therefore Clarendon owes no duty to defend or indemnify Southern States. See Record Document 9 at 5-6. The court looks to the Johnsons' allegations[5] to determine when the property damage and bodily injury occurred.

---

[4] This diversity case is governed by Louisiana substantive and choice of law rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938).

[5] The court considers all three of the Johnsons' petitions: the original petition for damages, the first amended petition, and the second amended petition. See Record 9, Ex. 1.

1. **Property Damage.**

Louisiana courts apply the "manifestation theory" to determine when property damage occurs. See Liberty Mut. Ins. Co. v. Jotun Paints, Inc., 555 F.Supp.2d 686, 697 (E.D. La. 2008); Oxner v. Montgomery, 794 So.2d 86, 92 (La. App. 2d Cir. 2001).[6] Under the manifestation theory, property damage is deemed to occur "when the damage manifests itself, rather than when the negligent act which causes it occurs." Oxner, 794 So.2d at 92; see also New Orleans Assets v. Travelers Prop. Cas., No. 01-2171, 2002 WL 32121257, at *2 (E.D. La. Sept. 12, 2002) (explaining that "[t]he more prevalent manifestation theory . . . deems property damage to occur at the point when it becomes manifest, or when it is discovered"). The Clarendon policy is triggered only if the property damage to the Johnsons' home manifested during the policy period. See id.

The Johnsons discovered the mold and other damage in June 2007, after the expiration of the Clarendon policy. As mentioned, the Clarendon policy insured Southern States from August 4, 2005, to August 4, 2006. The Johnsons did not purchase and move into their home until September 15, 2006. See Record Document

---

[6] But see Orleans Parish Sch. Bd. v. Scheyd, Inc., 673 So.2d 274, 277-78 (La. App. 4th Cir. 1996) (stating that "[w]e cannot make the 'quantum leap' and say that the manifestation theory is applicable, as a matter of law, in all cases"). The parties do not dispute application of the manifestation theory. See Record Document 23 at 5.

9, Ex. 1, Petition for Damages at 1-2. The Johnsons state in their petition that they learned of the prior water damage to their home "for the first time" in late June 2007. See id., Second Amended Petition at 5. The Johnsons then had their home tested and discovered it contained high levels of penicillium/aspergillas fungus. See id. It was not until this time, in June 2007, that the Johnsons discovered the mold and other property damage. Although the alleged negligent repair by Southern States occurred in December 2005, the resulting damage did not manifest until well after the expiration of the Clarendon policy period. Therefore, the property damage did not occur during the policy period and the Clarendon policy is not triggered.

### 2. Bodily Injury.

The bodily injury to the Johnsons' child could not have occurred, under either the manifestation or the exposure theory,[7] until after the family moved into the home in September 2006. See Record Document 9, Ex. 1, Petition for Damages at 1-2.

---

[7] Louisiana courts apply the exposure theory to bodily injury resulting from long-latency occupational disease. See S. Silica of La., Inc. v. La. Ins. Guar. Ass'n, 979 So.2d 460, 464 (La. 2008). Under the exposure theory, the bodily injury is deemed to occur when the exposure to the harmful conditions occurred. See 15 William Shelby McKenzie & H. Alston Johnson, III, Louisiana Civil Law Treatise § 183 (3d ed. 2010) (citing Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992)). See also Soc'y of Roman Catholic Church of Diocese of Lafayette and Lake Charles, Inc. v. Interstate Fire & Cas. Co., 26 F.3d 1359 (5th Cir. 1994) (applying the "first encounter" rule where a priest molested children over a period of time and holding that the bodily injury occurred when the child was first molested during a policy year).

Thus, the bodily injury did not occur during the Clarendon policy period.

Clarendon's first motion for summary judgment is **GRANTED**. The Johnsons' property damage and bodily injuries did not "occur during the policy period," and Clarendon owes no duty to indemnify or defend Southern States.

### D. Policy Exclusions.

Under Louisiana law, "[a]n insurance policy is a contract between the parties, and should be construed employing the general rules of interpretation of contracts." Mossy Motors, Inc. v. Cameras Am., 898 So.2d 602, 605 (La. App. 4th Cir. 2005). "Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning." Cadwallader v. Allstate Ins. Co., 848 So.2d 577, 580 (La. 2003). "Ambiguous policy provisions are generally construed against the insurer and in favor of coverage." Id.

#### 1. The Work Product Exclusion.

The AVIC policy includes a "work product" exclusion.[8] The insurer contends that the provision excludes coverage of costs associated with the replacement or repair of the plumbing systems and fixtures. See Record Document 28. The policy

---

[8] The Clarendon policy contains the same work product exclusion. See Record Document 33; Record Document 9, Ex. 2, CGL Form at 2, 5, 14-15.

states, in pertinent part:

> 2. **Exclusions**
> This insurance does not apply to:
> . . .
>
> k. **Damage to Your Product**
> "Property damage" to "your product" arising out of it or any part of it.
>
> l. **Damage to Your Work**
> "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."[9]

---

[9] The policy defines "property damage" and "products-completed operations hazard" as follows:

> "Property damage" means:
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.
>
> "Products-completed operations hazard":
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
> (1) Products that are still in your physical possession; or
> (2) Work that has not yet been completed or abandoned.

> This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[10]

Record Document 28, Ex. A, CGL Form at 1, 4. The policy defines "your work" to mean "(a) [w]ork or operations performed by you or on your behalf; and (b) [m]aterials, parts or equipment furnished in connection with such work or operations." Id. "Your work" also includes any "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" Id.

Louisiana courts have consistently held that work product exclusions "eliminate coverage for the cost of repairing or replacing the insured's own defective work product." Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 420 (5th Cir. 1982); see Supreme Servs. & Specialty Co. v. Sonny Greer, 958 So.2d 634, 643 (La. 2007) (holding that "a CGL policy containing the 'work product' exclusion does not insure any obligation of the policyholder to repair or replace his own defective product"). As the Supreme Court of Louisiana explained, "[t]he 'work product' exclusion reflects the insurance company's intent to avoid the possibility that

---

Record Document 28, Ex. A, CGL Form at 12, 13.

[10] Southern States does not contend, and the record does not show, that a subcontractor performed the original construction or the repairs.

11

coverage under a CGL policy will be used to repair and replace the insured's defective products and faulty workmanship. A CGL policy is not written to guarantee the quality of the insured's work or product." Supreme Servs. & Specialty Co., 958 So.2d at 641 (internal quotations omitted); see 15 McKenzie & Johnson, supra, § 198. However, the exclusion is limited to "the damage to the particular work performed by the insured," and does not apply to "the overall damage that . . . the defective work product causes" or economic losses. Todd Shipyards Corp., 674 F.2d at 421-22; see Supreme Servs. & Specialty Co., 958 So.2d at 643.

Southern States does not dispute that its original construction and later repair of the home's plumbing systems meet the definition of "your work" or that the property damage to the plumbing systems and fixtures fall within the work product exclusion. See Record Document 31. As there is no genuine dispute of material fact, the court finds that the AVIC policy does not insure Southern States for the repair or replacement of the home's plumbing system and fixtures.[11] Accordingly, AVIC's motion for summary judgment is **GRANTED**, to the extent that the insurer has no obligation to Southern States with regard to the repair or replacement of the plumbing

---

[11] AVIC only contends that the work product exclusion precludes coverage for the repair and replacement of the plumbing system and fixtures. See Record Document 28. It does not claim, and the court does not hold, that the provision excludes coverage of other property damage or loss of use.

system or fixtures.[12]

## 2. The Mold Exclusion.

The AVIC policy includes a provision excluding coverage for property damage or bodily injury related to fungus.[13] The insurer maintains that the damages sought by the Johnsons fall within the policy's fungus exclusion, precluding coverage for Southern States. See Record Document 28.

The AVIC policy's fungus exclusion provides, in part:

This insurance does not apply to:

(1) "Bodily Injury," "Property Damage" . . . arising **directly or indirectly** out of any actual, alleged or threatened discharge, dispersal, seepage, migration, release, growth, infestation, spread or escape of fungus including, but not limited to **mold** . . . .

. . .

(3) Rot, decay, corrosion, or other gradual deterioration, delamination, or adhesive failure, weakening, or deformation of wood products **or other material** caused by **continuous, prolonged or repeated contact with water or moisture** . . . .

Record Document 28, Ex. A, Combination Endorsement at 4 (emphasis added). The

---

[12] Clarendon makes the same arguments as AVIC regarding its work product exclusion. See Record Document 33. If the court had not granted Clarendon's first motion for summary judgment, the court would have granted Clarendon's second motion for summary judgment as to the work product exclusion.

[13] The Clarendon policy also contains a mold exclusion. The AVIC and Clarendon provisions are not identical, but both seek to exclude property damage and bodily injury arising from fungus.

provision clearly excludes coverage for bodily injury and property damage caused "directly or indirectly" by mold. The Johnsons seek medical expenses for their daughter's illness, which they claim resulted from prolonged exposure to mold.[14] See Record Document 9, Ex. 1, First Amended Petition at 2. As the illness is alleged to arise solely from mold, the policy's fungus exclusion precludes coverage for the bodily injury. The Johnsons also claim costs of remediating the "toxic mold" and compensation for being forced out of their home. See id., Second Amended Petition at 6, 9. These damage claims are attributable to mold and clearly excluded under the provision.

The exclusion also precludes coverage for damage caused by "continuous, prolonged or repeated contact with water or moisture." Record Document 28, Ex. A, Combination Endorsement at 4. To the extent the Johnsons are alleging water or moisture damage, the policy's fungus provision excludes coverage of these damages as well.[15]

---

[14] The petition states that the Johnsons' daughter's physicians "opined that the high mold content likely lead [sic] to her health problems, and that she would be faced with an increased risk of respiratory problems and allergies as a result of the prolonged exposure to mold." Record Document 9, Ex.1, First Amended Petition at 2.

[15] The only other damages sought by the Johnsons against Southern States are the repairs to the plumbing systems and fixtures themselves. As discussed previously, these damages are excluded under AVIC's work product exclusion.

AVIC's motion for summary judgment is **GRANTED**, insofar as AVIC has no duty to provide a defense, coverage, or indemnity to Southern States for the bodily injury or property damages arising from mold or water exposure.[16]

### III. CONCLUSION

Based on the foregoing analysis, Clarendon's first motion for summary judgment (Record Document 9) is **GRANTED**. Clarendon's second motion for summary judgment (Record Document 33) is **MOOT**. AVIC's motion for summary judgment is (Record Document 28) is **GRANTED**.

A judgment consistent with the terms of this memorandum ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 23rd day of March, 2011.

JUDGE TOM STAGG

---

[16] The Clarendon policy's fungus provision excludes from coverage "'[b]odily injury' or 'property damage' which would not have occurred **but for** . . . 'fungi,'" and "[a]ny loss, cost or expenses arising out . . . 'fungi.'" Record Document 9, Ex. 2, Fungi Exclusion at 1 (emphasis added). If the court had not granted Clarendon's first motion for summary judgment, the court would have granted Clarendon's second motion insofar as the fungus provision excludes coverage for any property damage and bodily injuries caused by mold. However, unlike the AVIC provision, the Clarendon provision does not exclude water or moisture damage. The court would have denied Clarendon's motion with regard to any damage attributable to water or moisture and not mold.